**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**GREENBELT DIVISION**

| | |
|---|---|
| **DIANE GOODWIN** * | |
| **9731 Narragansett Parkway** | |
| **College Park, MD 20740** * | |
| | |
| *Plaintiff,* * | |
| | |
| **v.** * | **Civ. Action No. 8:16-cv-2068** |
| | |
| **and** * | |
| | |
| **MIDLAND CREDIT** * | |
| **MANAGEMENT, INC.** | |
| **500 West First** * | |
| **Hutchinson, KS 67501** | |
| * | |
| | |
| **Serve on:** * | |
| | |
| **CSC-Lawyers Incorporating** * | |
| **Service Company** | |
| **7 St. Paul Street, Ste. 820** * | |
| **Baltimore, MD 21202,** | |
| * | |
| | |
| *Defendants.* * | |
| | |
| * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

**COMPLAINT AND DEMAND FOR JURY TRIAL**

Diane Goodwin ("Plaintiff") by and through undersigned counsel and for her

Complaint against the Midland Credit Management, Inc. ("MCM"), alleges as follows:

**INTRODUCTION**

1.    Plaintiff Diane Goodwin brings this action seeking redress for the illegal

practices of defendant Midland Credit Management, Inc. in connection with the

collection of a debt in violation of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. ("FDCPA").

2.     The Plaintiff alleges that the collection practices of MCM violate the FDCPA because it communicated with the Plaintiff several times in attempts to collect the subject debt after her written request for MCM to cease communication with her in reference to the subject debt, in violation of FDCPA § 1692c.

3.     Plaintiff seeks statutory damages, actual damages, attorneys' fees, and costs, pursuant to the FDCPA.

4.     The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress also found that existing laws and procedures for redressing debt collection activities were inadequate to protect consumers. 15 U.S.C. § 1692(b). Congress enacted the FDCPA to eliminate abusive debt collection practices by debt collectors, to ensure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote uniform State action to protect consumers against debt collection abuses. 15 U.S.C. § 1692(e).

5.     The FDCPA is a comprehensive statute that prohibits a catalog of activities in connection with the collection of debts by third parties. The FDCPA imposes civil liability on any person or entity that violates its provisions and establishes general

standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

6.     The FDCPA is a strict liability statute that provides for actual or statutory damages upon the showing of one violation. The Fourth Circuit and other federal courts have held that whether a debt collector's conduct violates the FDCPA should be judged from the standpoint of the "least sophisticated consumer." *United States v. Nat'l Fin. Services, Inc.*, 98 F.3d 131 (4th Cir. 1996); *Clomon v. Jackson*, 988 F.2d 1314 (2d Cir. 1993); *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168 (11th Cir. 1985); *Graziano v. Harrison*, 950 F.2d 107 (3rd Cir. 1991); *Swanson v. Southern Oregon Credit Serv., Inc.*, 869 F.2d 1222 (9th Cir. 1988). The purpose of the least-sophisticated consumer standard "is to ensure that the FDCPA protects all consumers, the gullible as well as the shrewd." *Nat'l Fin. Services, Inc.*, 98 F.3d at 136 (quoting *Clomon v. Jackson*, 988 F.2d at 1318).

7.     The FDCPA is a remedial statute that is construed liberally in favor of the debtor. *See, e.g., Garcia-Contreras v. Brock & Scott, PLLC*, 775 F.Supp.2d 808 (M.D.N.C. 2011); *Sprinke v. SB&C, Ltd.*, 472 F. Supp. 2d 1235 (W.D. Wash. 2006); *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162 (9th Cir. 2006); *Johnson v. Riddle*, 305 F.3d 1107 (10th Cir. 2002).

## JURISDICTION AND VENUE

8.      The jurisdiction of this Court is conferred by 15 U.S.C. § 1692k(d), and 28 U.S.C. 1331.

9.      The Plaintiff is a natural person and resident of the State of Maryland. She is a "consumer" as defined by 15 U.S.C.A. § 1692a.

10.     Defendant Midland Credit Management, Inc. ("MCM") is a corporation formed pursuant to the laws of Kansas and registered to do business in the State of Maryland, with a Resident Agent in Baltimore City, Maryland. Defendant MCM also holds an active Collection Agency License with the Maryland Department of Labor, Licensing & Regulation.

11.     The United States District Court for the District of Maryland is the proper venue pursuant to 28 U.S.C.A. § 1391(b)(2) because the events giving rise to Plaintiff's Complaint occurred in the state of Maryland.

## PARTIES

12.     Plaintiff Diane Goodwin is an individual who is a "consumer" as defined in 15 U.S.C. § 1692a(3) of the FDCPA, as she is a natural person allegedly obligated to pay any debt, in this case alleged overdue payments from a Sears Premier retail credit card.

13.     At all relevant times, MCM acted as a "debt collector" within the meaning of 15 U.S.C. § 1692a(6),because it regularly uses the U.S. Mail to collect and attempt to collect debts owed or due to another. MCM's website states "Midland Credit Management (MCM) is a company that helps consumers resolve past-due financial obligations," and explains that it services outstanding debt obligations once creditors

"turn [a consumer's account] over to collections."[1] MCM regularly collects and attempts to collect consumer debts incurred or alleged to have been incurred for personal, family, or household purposes on behalf of creditors and debt buyers.

## FACTUAL ALLEGATIONS

### A.    The Subject Debt

14.    Diane Goodwin allegedly incurred charges and later allegedly defaulted on a Sears Premier Credit Card issued by Citibank, N. A., initially opened in order to purchase a household appliance, and used thereafter for other personal and household items. This obligation shall be referred to herein as "the subject debt."

15.    On or about October 15, 2014, Citibank, N.A. sold the subject debt to Midland Funding, LLC.

16.    MCM was engaged to collect the subject debt on behalf of Midland Funding, LLC.

17.    On or about October 20, 2015, MCM mailed a "Notice of New Ownership and Pre-Legal Review" letter to Ms. Goodwin. This letter stated that MCM is a debt collection company and, "will be collecting on, and servicing your account, on behalf of MIDLAND FUNDING, LLC." This letter also contained the following notice:

> Please understand this is a communication from a debt collector. This is an attempt to collect a debt. Any information obtained will be used for that purpose.

18.    On or about January 29, 2015, MCM mailed Ms. Goodwin a letter stating that her account had been transferred to legal collections and that legal proceedings may

---

[1] Midland Credit Management, Inc., *Who is MCM?*, https://www.midlandcreditonline.com/who-is-mcm/ (accessed June 13, 2016).

be initiated against her. This letter contained the same notice advising Ms. Goodwin that MCM is a debt collector attempting to collect a debt.

19.     On or about April 1, 2015, Ms. Goodwin mailed MCM a letter explaining that she was experiencing a financial hardship due to unemployment resulting from her disability, and requested a period of forbearance. This letter also contained the following paragraph requesting that MCM cease and desist its attempts to collect the subject debt:

> I am also requesting a CEASE AND DESIST of all collection calls to my home phone number, . . . cell phone number, . . . and any other phone that belongs to our family, and I request that you do not contact our place of employment. (emphasis in original).

20.     Despite Ms. Goodwin's written request that MCM cease and desist collection calls, MCM telephoned Ms. Goodwin, which she specifically listed in her cease and desist letter as a number she wished MCM to cease calling, at least 26 times between September 2, 2015, and October 22, 2015.

21.     An MCM employee Ms. Goodwin recalls to be named Eric Ballock telephoned Ms. Goodwin on or about September 2, 2015. Ms. Goodwin informed Mr. Ballock that she had mailed MCM a cease and desist letter, and that he should not be calling her. Mr. Ballock made Ms. Goodwin feel threatened by saying "You know we filed a lawsuit against you." Ms. Goodwin felt that if she did not pay right away that she would be sued. Ms. Goodwin became upset during this call and requested to speak with a supervisor. Mr. Ballock transferred Ms. Goodwin to an account manager who identified himself as Eric Goltz. Ms. Goodwin also informed Mr. Goltz that she had mailed a cease and desist to MCM, and that MCM should stop calling her. Ms. Goodwin felt that Mr. Goltz was not paying attention to her request to stop calling, and disregarded her cease and desist letter.

22.     On September 23, 2014, at 3:43 p.m., MCM telephoned Ms. Goodwin and she asked MCM not to contact her, and reminded MCM that she had previously sent MCM a cease and desist letter.

23.     MCM telephoned Ms. Goodwin again on September 29, 2015 at 12:51 p.m. and the Plaintiff did not answer the phone.

24.     MCM telephoned Ms. Goodwin again on September 30, 2015 at 2:01 p.m. and Ms. Goodwin did not answer the phone.

25.     MCM telephoned Ms. Goodwin again on October 1, 2015, at 1:25 p.m. and Ms. Goodwin did not answer the phone.

26.     MCM telephoned Ms. Goodwin again on October 2, 2015, at 2:53 p.m. and Ms. Goodwin did not answer the phone.

27.     MCM telephoned Ms. Goodwin again on October 5, 2015, at 2:31 p.m. and Ms. Goodwin did not answer the phone.

28.     MCM telephoned Ms. Goodwin again on October 6, 2015, at 12:01 p.m. and Ms. Goodwin did not answer the phone.

29.     MCM telephoned Ms. Goodwin again on October 7, 2015, at 2:44 p.m. and Ms. Goodwin did not answer the phone.

30.     MCM telephoned Ms. Goodwin again on October 8, 2015, at 9:00 a.m. and Ms. Goodwin did not answer the phone.

31.     MCM telephoned Ms. Goodwin again on October 8, 2015, at 4:09 p.m. and Ms. Goodwin did not answer the phone.

32.     MCM telephoned Ms. Goodwin again on October 9, 2015, at 8:59 a.m. and Ms. Goodwin did not answer the phone.

33.     MCM telephoned Ms. Goodwin again on October 9, 2015, at 9:05 a.m. and Ms. Goodwin answered the phone to ask again not to be contacted by MCM and reminded MCM of her cease and desist letter.

34.     MCM telephoned Ms. Goodwin a third time on October 9, 2015, at 3:29 p.m., and Ms. Goodwin did not answer.

35.     MCM telephoned Ms. Goodwin a fourth time on October 9, 2015, at 3:32 p.m., and Ms. Goodwin answered the phone to ask again not to be contacted and reminded MCM that she had previously mailed it a cease and desist letter.

36.     MCM telephoned Ms. Goodwin again on October 12, 2015, at 1:29 p.m. and Ms. Goodwin did not answer the phone.

37.     MCM telephoned Ms. Goodwin a second time on October 12, 2015, at 1:34 p.m., and Ms. Goodwin answered the phone to ask again not to be contacted and reminded MCM that she had previously mailed it a cease and desist letter.

38.     MCM telephoned Ms. Goodwin again on October 13, 2015, at 8:55 a.m. and Ms. Goodwin did not answer the phone.

39.     MCM telephoned Ms. Goodwin a second time on October 13, 2015, at 6:20 p.m., and Ms. Goodwin did not answer the phone.

40.     MCM telephoned Ms. Goodwin again on October 14, 2015, at 1:23 p.m., and Ms. Goodwin did not answer the phone.

41.     MCM telephoned Ms. Goodwin a second time on October 14, 2015, at 5:55 p.m., and Ms. Goodwin did not answer the phone.

42.     MCM telephoned Ms. Goodwin on October 15, 2015, at 9:09 a.m. and Ms. Goodwin did not answer the phone.

43.     MCM telephoned Ms. Goodwin a second time on October 15, 2015, at 5:10 p.m., and Ms. Goodwin did not answer the phone.

44.     MCM telephoned Ms. Goodwin again on October 16, 2015, at 2:44 p.m., and Ms. Goodwin did not answer the phone.

45.     MCM telephoned Ms. Goodwin again on October 19, 2015, at 7:28 p.m. and Ms. Goodwin did not answer the phone.

46.     MCM telephoned Ms. Goodwin again on October 20, 2015, at 4:13 p.m. Ms. Goodwin did not answer her phone.

47.     MCM telephoned Ms. Goodwin again on October 22, 2015, and Ms. Goodwin answered her phone to ask MCM why it was constantly calling her after she requested that it cease telephone communications in her cease and desist letter, and several phone calls thereafter. Ms. Goodwin recalls that she spoke with a man named John Chad. This call lasted for 17 minutes and 16 seconds. Ms. Goodwin recalls that she got very upset during this call, and felt that Mr. Chad realized this and decided to take her request seriously. Mr. Chad indicated that he was very concerned about all the calls she had received after mailing a cease and desist, and that he would make a complaint to management on her behalf. Ms. Goodwin is not aware of whether Mr. Chad actually made this complaint.

48.     MCM's initial telephone call to Ms. Godowin made her feel threatened and frightened. As the calls continued on a nearly daily basis, Ms. Goodwin became very frustrated and angry. MCM made Ms. Goodwin feel that the law was not working for her, and feared there was no way to make the constant calls stop.

49.     On or about March 23, 2016—nearly a year after Ms. Goodwin's cease and

desist letter to MCM—MCM mailed Ms. Goodwin a response to her cease and desist letter acknowledging her request that it "cease and desist all communication by mail." This letter was not only nearly a year late, but also inaccurate, because Ms. Goodwin had requested that MCM stop calling her and specified specific phone numbers that it should not use to contact her.

**COUNT I**
**<u>Violation of the Fair Debt Collection Practices Act</u>**

50.     Plaintiff hereby incorporates by reference the allegations contained in the above paragraphs of this Complaint as if fully set forth herein.

51.     The subject debt is a "debt" as that term is defined by 15 U.S.C. § 1692a(5), as it allegedly arose out of a transaction for money, service or property that was primarily for personal, family and/or household purposes. Specifically, the alleged debt relates to Ms. Goodwin's Sears Premier Card she obtained to purchase personal household items.

52.     In its attempts to collect the subject debt Defendant materially violated FDCPA § 1692c(c) because it communicated and attempted to communicate with the Plaintiff on several occasions after being notified that the Plaintiff wished for MCM to cease further communication with her with respect to the subject debt.

53.     As a direct consequence of the Defendant's acts, practices, and conduct, the Plaintiff felt threatened, became frustrated and angry, and ultimately felt that the law was not going to protect her.

54.     Pursuant to FDCPA § 1692k Plaintiff is entitled to statutory damages and actual damages for frustration and aggravation.

WHEREFORE, Plaintiff respectfully requests the following relief:

a.     A judgment for actual damages relating to Plaintiff's frustration and aggravation pursuant to pursuant to 15 U.S.C. § 1692k(a)(1) in an amount currently estimated to be in excess of $75,000.00;

b.     A judgment for statutory damages required by to 15 U.S.C. § 1692k(a)(2)(A) in the amount of $1,000.00;

c.     A judgment awarding Plaintiff her costs of litigation and reasonable attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and

d.     An order for such other and further relief as may be just and proper.

### JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues in this action, except for any issues relating to the amount of attorneys' fees and litigation costs to be awarded should Plaintiff prevail on any of her claims in this action.

Dated: June 14, 2016                           Respectfully Submitted,

/s/ E. David Hoskins
E. David Hoskins, Esq., No. 06705
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
davidhoskins@hoskinslaw.com


/s/ Steven B. Isbister
Steven Isbister, Esq., No. 14123
THE LAW OFFICES OF E. DAVID HOSKINS, LLC
16 East Lombard Street, Suite 400
Baltimore, Maryland 21202
(410) 662-6500 (Tel.)
stevenisbister@hoskinslaw.com